1

2

3

4

5

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

6

7

8

9

10

11

12

13

14

| | |
|---|---|
| **LEONARD MARELLA,** | **1:09-cv-00453-OWW-JLT** |
| **Plaintiff,** | **MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT (Doc. 45)** |
| **v.** | |
| **CITY OF BAKERSFIELD, et al.,** | |
| **Defendants.** | |

15

### I.   INTRODUCTION.

16    Plaintiff Leonard Marella ("Plaintiff") proceeds with a civil

17 rights action pursuant to 42 U.S.C. § 1983 against Defendants the

18 City of Bakersfield, the Bakersfield Police Department, William

19 Rector, Anthony Hernandez, Dennis Park, Eric South, Paul Yoon, and

20 Stephen Kauffman ("Defendants").

21    On April 14, 2010, Defendants filed a motion for summary

22 judgment. (Doc. 45). Defendants filed a supplemental memorandum

23 on April 16, 2010. (Doc. 46).

24    Plaintiff filed opposition to Defendants' motion for summary

25 judgment on May 5, 2010. (Doc. 51). Defendants filed a reply to

26 Plaintiff's opposition on May 12, 2010. (Doc. 52). Defendants

27 also filed evidentiary objections to Plaintiff's opposition on May

28

**1**

1  12, 2010.  (Doc. 53).[1]

2      Defendants filed a motion to strike three of the declarations

3  submitted in support of Plaintiff's opposition to their motion for

4  summary judgment on May 12, 2010.  (Doc. 54).  Plaintiff did not

5  file opposition to Defendants' motion to strike.

6      Plaintiff filed a supplement to his opposition to the motion

7  for summary judgment on May 25, 2010.  (Doc. 55).

8                    **II.  FACTUAL BACKGROUND**.

9      On March 11, 2008, Bakersfield Police Officers Anthony

10 Hernandez, Dennis Park, Paul Yoon, Stephen Kauffman, and Eric South

11 were present on the 100 block of El Tejon Avenue in Bakersfield,

12 California attempting to locate a robbery and attempted murder

13 suspect. (SUMF 2).  The suspect the officers were seeking was

14 described as a Hispanic male, mid-twenties, with a thin mustache

15 and goatee, and was suspected of having stolen a gun safe that

16 contained several firearms.  (SUMF 3, 4).

17     Hernandez, Yoon, Kauffman, and Park parked their patrol cars

18 and began to walk to the corner of El Tejon Avenue and California

19 Street, while South and his K9 unit entered the south alley of El

20 Tejon Avenue.  (SUMF 5).  Upon walking around the corner of El

21 Tejon Avenue and California Street, Hernandez, Yoon, Kauffman, and

22 Park encountered Plaintiff. (SUMF 6).  Plaintiff immediately began

23 running away from the officers.  (SUMF 8).  Hernandez ordered

24 Plaintiff to stop, but Plaintiff continued running.  (SUMF 10).

25 Hernandez, Kauffman, and Yoon chased Plaintiff, while Park ran back

26

27 [1] Even absent the evidence subject to Defendants' evidentiary objections, the
   record contains evidence sufficient to preclude summary judgment.  Accordingly,
28 the Court need not rule on Defendants' evidentiary objections in order to
   adjudicate the motion for summary judgment.

                                **2**

1 to his patrol vehicle.  (SUMF 11).[2]  South saw Plaintiff as he ran

2 towards the alley.  (SUMF 12).[3]

3     In an effort to evade the pursuing officers, Plaintiff jumped

4 over a fence and ran into a residence.  (SUMF 17).  The occupants

5 of the residence Plaintiff ran into refused to accept a monetary

6 bribe or to permit Plaintiff to hide from police in their house, so

7 Plaintiff exited the residence.  (SUMF 18).  The parties dispute

8 Plaintiff's conduct upon exiting the residence.

9 **Defendants' Version**

10    Defendants contend that Plaintiff began running immediately

11 upon exiting the residence.  (SUMF 18).  According to Defendants,

12 Hernandez caught up with Plaintiff and attempted to grab him by the

13 shoulder.  (SUMF 20).  Plaintiff threw his arm back in an elbowing

14 motion, striking Hernandez in the chest and causing him to lose his

15 grip on Plaintiff.  (SUMF 20).  Plaintiff continued to run.  (SUMF

16 21).  Hernandez ordered Plaintiff to get on the ground, but

17 Plaintiff refused.  (SUMF 23).  Hernandez deployed his taser one

18 time in order to stop Plaintiff.  (SUMF 24).

19    Defendants allege that South could see Plaintiff holding

20 something in his hand as he fell to the ground after being tased,

21 and that Plaintiff put both of his hands underneath his body to

22 conceal whatever he was holding.  (SUMF 25, 26).  According to

23 South, he ordered Plaintiff to show the officers his hands and

24 stated that if Plaintiff did not comply, he would release his K9.

25

26 [2] The facts identified in Plaintiff's response to SUMF 11 do not controvert the pertinent information contained in SUMF 11.

27

28 [3] Plaintiff contests portions of SUMF 12.  Throughout this memorandum decision, only the undisputed portions of Defendants' SUMF's are included in the factual history, unless otherwise noted.

1   (SUMF 28).   Kauffman struck Plaintiff one time on his lower body
2   and ordered Plaintiff to show his hands.  (SUMF 30).   South again
3   ordered Plaintiff to show his hands and again threatened to release
4   his K9.  (SUMF 31).   Plaintiff attempted to pull his knees towards
5   his chest, at which point South ordered the K9 to engage him.
6   (SUMF 34).   The K9 engaged Plaintiff's right leg.  (SUMF 35).
7   Plaintiff kicked the K9 with his left leg, prompting the K9 to
8   release Plaintiff's right leg and engage his left leg.  (SUMF 36).

9        Ultimately, Plaintiff complied with South's command to show
10  his hands, placing them in front of his body and rolling to his
11  right side.  (SUMF 38).  The officers were then able to get control
12  of Plaintiff's arms, and the K9 released his hold.  (SUMF 39, 40).
13  After Plaintiff was taken into custody, the officers picked up two
14  clear plastic bundles containing a substance later identified as
15  methamphetamine.  (SUMF 41).

16  **Plaintiff's Version**

17       Plaintiff states that as he exited the residence, officers
18  instructed him to raise his hands, and he complied.  (Marella Dec.
19  at 25-26).   Plaintiff contends he did not run upon exiting the
20  residence.  (Marella Dec. at 26).  As Plaintiff was standing on the
21  porch with his hands raised, he was tased on the left side of his
22  face and fell unconscious.  (Id.).   Plaintiff recalls that as he
23  lay in the hospital bed, there was taser dart under his left arm.
24  (Id. at 33).

25                    **III.  <u>LEGAL STANDARD</u>.**

26       Summary judgment/adjudication is appropriate when "the
27  pleadings, the discovery and disclosure materials on file, and any
28  affidavits show that there is no genuine issue as to any material

                                **4**

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of

material fact by presenting affirmative evidence from which a jury could find in his favor." *Id.* (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

## IV. <u>DISCUSSION</u>.

### A.  Plaintiff's Claims Against Municipal Defendants

Local governments are "persons" subject to suit for "constitutional tort[s]" under 42 U.S.C. § 1983. *Haugen v. Brosseau*, 339 F.3d 857, 874 (9th Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 55). " Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs.

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional [*10] tort. In particular, … a municipality cannot be held liable solely because it employs a tortfeasor, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

*Monell*, 436 U.S. at 691. A local government's police department is subject to liability under the *Monell* framework. *See, e.g., Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) ("Under *Monell*...[plaintiffs] must show that the Bremerton Police Department has a custom or policy of tolerating and allowing

unlawful arrests and arrests with unreasonable force").

As alternatives to proving the existence of a policy or custom of a municipality, a plaintiff may show: (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id.*

### 1.   Bakersfield Police Department

As Defendants point out, although the caption of the complaint identifies the Bakersfield Police Department as a Defendant, the complaint is devoid of allegations regarding any conduct on the part of the Bakersfield Police Department. Failure to allege facts sufficient to establish the a claim for municipal liability renders summary judgment appropriate as to the municipal entity. *See, e.g., Annan-Yartey v. Honolulu Police Dep't*, 351 Fed. Appx. 243, 246 (9th Cir. 2009) (unpublished) (affirming grant of summary judgment to police department where there were no allegations sufficient to  establish department's liability under *Monell*); *accord Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir. 2007) (affirming grant of summary judgment to municipal entity

where plaintiff failed to present sufficient evidence to establish *Monell* liability at summary judgment stage); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (same).   Defendants' motion for summary judgment on Plaintiff's claim against the Bakersfield Police Department is GRANTED.[4]

### 2.  City of Bakersfield

The complaint contains the following allegations regarding the City of Bakersfield:

> 25.  The City of Bakersfield developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Bakersfield, which caused the violation of plaintiff's rights.
> 26.  It was the policy and/or custom of the City of Bakersfield and Chief of Police to inadequately and improperly investigate citizens complaints of police misconduct, and acts of misconduct were instead tolerated by the City of Bakersfield and Chief of Police, including, but not limited to, the following incidents: a. [plaintiff may, but is not required to list such prior incidents as may be known to him]
>
> 27.  It was the policy and/or custom of the city of Bakersfield and Chief of Police to inadequately supervise and train its officers, including the defendant officers, therefailing to adequately discourage further constitutional violations on the part of its police officers. The city did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.
>
> 28.  As a result of the above described policies and customs, police of the City of Bakersfield, including the defendant officers, believed that their actions would not be properly monitored by supervisory officers that misconduct would not be investigated or sanctioned, but would be tolerated.
>
> 29.  The above described policies and customs demonstrated a deliberate indifference on the party of the policymakers of the city of Bakersfield to the constitutional rights of persons within the city, and

---

[4] At oral argument, Plaintiff's counsel conceded that Defendants' motion for summary judgment on Plaintiff's claims against the Bakersfield Police Department should be granted.

8

1

2
were the cause of the violations of plaintiff's rights
alleged herein.

Plaintiff fails to present any evidence in support of the complaint's allegations against the City of Bakersfield. Further, Plaintiff's opposition to the motion for summary judgment does not address the propriety of summary judgment on Plaintiff's municipal liability claim. Defendants have presented uncontroverted evidence that the City of Bakersfield provides adequate training to its officers concerning use of force. (SUMF 48).[5] Accordingly, Defendants' motion for summary judgment on Plaintiff's claim against the city of Bakersfield is GRANTED.[6]

**B. Plaintiff's Section 1983 Claims Against Individual Defendants**

    **1. Defendant Rector**

At all times relevant to this action, Defendant Rector was Bakersfield's Chief of Police. In a section 1983 action, there is no such thing as "supervisory liability," because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive summary judgment, Plaintiff must present evidence that Rector acted or failed to act unconstitutionally. *See id*. Plaintiff presents no such evidence.

---

[5] Plaintiff purports to dispute SUMF 48 on two grounds: (1) "No evidence at all supports this;" and (2) "the actions speak for themselves and the conduct of the officers indicate [sic] that they were inadequately trained." Plaintiff's attempt to dispute SUMF 48 fails on both counts. SUMF 48 is based on admissible evidence set forth in the declaration of Curtis J. Cope. Plaintiff offers no evidence to support his conclusory contention that because he was subjected to allegedly excessive force, the City of Bakersfield must not have adequately trained its officers.

[6] At oral argument, Plaintiff's counsel conceded that Defendants' motion for summary judgment on Plaintiff's claims against the City of Bakersfield should be granted.

**9**

1  It is undisputed that Rector was unaware of the events occurring on
2  March 11, 2008 until after the incident. (SUMF 46). It is also
3  undisputed that the arresting officers did not consult Rector at
4  any time prior to the incident. (SUMF 47). In short, there is no
5  evidence that Rector had any involvement in the events underlying
6  Plaintiff's complaint whatsoever. Plaintiff's opposition to the
7  motion for summary judgment does not contest the propriety of
8  summary judgment as to Rector.[7]  Accordingly, Defendants' motion
9  for summary judgment on Plaintiff's claim against Rector is
10 GRANTED.

11      **2. Defendant Hernandez**

12          **a. Constitutional Violation**

13      Allegations of excessive force are examined under the Fourth
14 Amendment's prohibition on unreasonable seizures. *E.g. Graham v.*
15 *Connor, 490 U.S. 386, 394 (1989); Deorle v. Rutherford*, 272 F.3d
16 1272, 1279 (9th Cir. 2001). Fourth Amendment analysis requires
17 balancing of the quality and nature of the intrusion on an
18 individual's interests against the countervailing governmental
19 interests at stake. *Graham*, 490 U.S. at 396. Thus, Excessive
20 force inquiries require balancing of the amount of force applied
21 against the need for that force under the circumstances. *Meredith*
22 *v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). Use of force
23 violates an individuals constitutional rights under the Fourth
24 Amendment where the force used was objectively unreasonable in
25 light of the facts and circumstances confronting them. *E.g.*
26 *Graham*, 490 U.S. at 397.

27

28 [7] At oral argument, Plaintiff's counsel conceded that Defendants' motion for
summary judgment on Plaintiff's claims against William Rector should be granted.

1

### (i) Quantum of Force

2    Plaintiff contends that as he exited the residence, officers
3 ordered him to raise his hands, and he complied. (Marella Dec. at
4 26). According to Plaintiff, Hernandez tased him in the face while
5 he was standing stationary on the front porch of the residence with
6 his hands raised above his head.[8]  The force Hernandez employed on
7 Plaintiff is quantified as intermediate, non-deadly force under the
8 law of the Ninth Circuit. *Bryan v. MacPherson*, 608 F.3d 614, 622
9 (9th Cir. 2010). An officer's use of a taser on an individual must
10 be justified by "a strong government interest that compels the
11 employment of such force." *Id*. (quoting *Drummond ex rel. Drummond*
12 *v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir.2003)).

13

### (ii) Government's Interest in Intermediate Force

14    The government's interest in the use of force is based on the
15 totality of the circumstances. *MacPherson*, 608 F.3d at 622. Three
16 "core factors" guide inquires into the government's interest in the
17 use of force: (1) the severity of the crime at issue; (2) whether
18 the suspect posed an immediate threat to the safety of the officers
19 or others; and (3) whether the suspect was actively resisting
20 arrest or attempting to evade arrest by flight. *Id*. (quoting
21 *Graham*, 490 U.S. at 396). The most important factor is whether the
22 suspect posed an immediate threat to the safety in light of
23 objective facts the officer was confronted with. *Id*. (citing *Smith*
24 *v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc) and
25 *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001)).

26

27
28
[8] Neither the complaint nor Plaintiff's deposition testimony specifies that
Hernandez was the individual who first tased Plaintiff, however, Hernandez
concedes he tased Plaintiff after Plaintiff exited the residence.

**11**

1   It is undisputed that Defendants suspected Plaintiff of having

2  committed a robbery, and that the officers observed Plaintiff

3  resisting arrest.   The government has an undeniable legitimate

4  interest in apprehending criminal suspects, and that interest is

5  even stronger when the criminal is suspected of a felony, which is

6  by definition a crime deemed serious by the state. *Miller v. Clark*

7  *County*, 340 F.3d 959 , 964 (9th Cir. 2003) (citation omitted).  The

8  crime Plaintiff was suspected of having committed weighs against a

9  finding that Hernandez employed excessive force.

10   According to Plaintiff, at the time Hernandez tased him in the

11  face, Plaintiff was standing stationary on the porch of the

12  residence with his hands above his head after complying with the

13  officers' order to raise his hands.  Under Plaintiff's version of

14  the facts, he posed no *immediate* threat to safety under the

15  circumstances, as he had ceased resisting arrest, had complied with

16  the officers' commands to raise his hands, and was submitting to

17  arrest.  *See Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir.

18  2001) (suspect's compliance with commands and absence of physical

19  assault on officers established lack of immediate threat); *compare*

20  *Smith v. City of Hemet*, 394 F.3d 689, 702-03 (9th Cir. 2005) (no

21  immediate threat posed by subject who continually ignored the

22  officers' requests to remove his hands from his pajamas and to

23  place them on his head but eventually complied and showed no signs

24  of fleeing the area)[9] *with Mattos v. Agarano*, 590 F.3d 1082, 1080

25  _____

26  [9] In *Smith,* the officers had no reason to suspect that the pajama-clad suspect
possessed a weapon.  By contrast, here, Defendants contend they suspected
27  Plaintiff was armed because they believed he had robbed an individual of a safe
containing several firearms.  However, because the record does not indicate when
28  the suspected robbery occurred, the reasonableness of the Defendants' purported
belief that Plaintiff was armed cannot be ascertained.

(9th Cir. 2010) (close quarters encounter with intoxicated suspect who was yelling profanities at officers and ordering them to leave while another person attempted to impede arrest constituted immediate threat); *see also Miller v. Clark County*, 340 F.3d 959,965 (9th Cir. 2005) (immediate threat present where fleeing felony suspect, whom officers believed was armed, was hiding in woods at night and could have ambushed officers).   The fact that Plaintiff did not pose an immediate threat weighs strongly in favor of a finding of excessive force.   Additionally, the fact that Plaintiff was not fleeing or resisting arrest when he was tased by Hernandez also weighs in favor of a finding of excessive force.

Although the balance of the "core factors" weighs in favor of a finding of excessive force, other circumstances Hernandez was confronted with militate against a finding of excessive force. Unlike the facts in cases such as *Deorle*, *Smith*, and *Bryan*, Plaintiff was wearing clothing that made it impossible for the officers to dispel their suspicion that Plaintiff was armed. (*See* Hernandez Dep. at 44).   Although, according to Plaintiff, his hands were raised above his head, he could have retrieved a concealed weapon from somewhere on his person within seconds.   Additionally, Plaintiff was standing no more than few steps away from the front door of a residence, creating the potential for a hostage situation. *See Forrett v. Richardson*, 112 F.3d 416, 421 (9th Cir. 1997) (fact that suspect was fleeing through a residential neighborhood created potential for hostage situation that implicated risk calculus in the minds of pursuing officers).

Whether Hernandez's use of intermediate force on Plaintiff was excessive under the totality of the circumstances presented is a

difficult question, however, in light of the fact that Plaintiff had purportedly complied with the officers' commands to raise his hands, was no longer fleeing, and was not engaged in "particularly bellicose" resistance, the force employed by Hernandez was constitutionally excessive. *See Bryan*, 608 F.3d at 626.

### b. Qualified Immunity

Government officials are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id*. at 628 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Bryan*, the Ninth Circuit held that the dearth of legal authority regarding the use of tasers and recent cases in the Ninth Circuit rendered an officer's unconstitutional use of a taser a reasonable mistake of law that was not clearly established at the time. *Id*. at 629. *Bryan* was decided June 18, 2010; it cannot serve as authority for clearly established law in this case which occurred before *Bryan* was decided. In light of *Bryan*, Hernandez is entitled to qualified immunity.

The Ninth Circuit summarized the relevant facts of *Bryan* as follows:

> Bryan was stopped at an intersection when Officer MacPherson, who was stationed there to enforce seatbelt regulations, stepped in front of his car and signaled to Bryan that he was not to proceed... Officer MacPherson requested that Bryan turn down his radio and pull over to the curb. Bryan complied with both requests, but as he pulled his car to the curb, angry with himself over the prospects of another citation, he hit his steering wheel and yelled expletives to himself. Having pulled his car over and placed it in park, Bryan stepped out of his car.
>
> ...Bryan was agitated, standing outside his car, yelling gibberish and hitting his thighs, clad only in his boxer

**14**

> shorts and tennis shoes...Bryan did not verbally threaten Officer MacPherson and, according to Officer MacPherson, was standing twenty to twenty-five feet away and not attempting to flee. Officer MacPherson testified that he told Bryan to remain in the car, while Bryan testified that he did not hear Officer MacPherson tell him to do so. The one material dispute concerns whether Bryan made any movement toward the officer. Officer MacPherson testified that Bryan took "one step" toward him, but Bryan says he did not take any step, and the physical evidence indicates that Bryan was actually facing away from Officer MacPherson. Without giving any warning, Officer MacPherson shot Bryan with his taser gun. One of the taser probes embedded in the side of Bryan's upper left arm. The electrical current immobilized him whereupon he fell face first into the ground, fracturing four teeth and suffering facial contusions.

608 F.3d 618-19. Hernandez was faced with a more dangerous situation than a routine traffic stop. Even accepting Plaintiff's version of the facts, Hernandez was engaged in hot pursuit of a person suspected of a violent felony who had already made a significant effort to evade officers and resist arrest. Unlike the man tased in *Bryan*, Plaintiff was fully clothed, facing Hernandez, and was suspected of having a weapon. Hernandez mistaken belief that he could lawfully employ his taser was at least as reasonable as the officer's mistake in *Bryan*. Accordingly, Defendants' motion for summary judgment on the issue of qualified immunity as to Hernandez is GRANTED.

### 3.   Officer South

#### a. Constitutional Violation

Whether a K9 engagement constitutes deadly force is an open question in the Ninth Circuit. *Smith v. City of Hemet*, 394 F.3d 689, 707 (9th Cir. 2005). At a minimum, a K9 strike presents at least the same quantum of "painful and frightening" intermediate force as a taser in dart-mode. *See Bryan*, 608 F.3d at 622

**15**

(discussing quantum of force associated with tasers).  Like a taser, a K9 strike entails high levels of physical pain and a foreseeable risk of injury.  *Id.*

Accepting Plaintiff's version of the facts as required in the context of Defendants' motion for summary judgment, officer South employed excessive force on Plaintiff.  Plaintiff contends that he was attacked by a K9 while he was lying on the floor incapacitated, and a rational jury could accept Plaintiff's account in light of evidence on the record.  (Id.).  It is undisputed that South ordered a K9 strike on Plaintiff.  According to Hernandez, Plaintiff fell to the floor immediately after being tased and was incapacitated for four to five seconds. (Hernandez Dep. at 43-45). South testified at his deposition he ordered the K9 strike within seconds of Plaintiff being tased, (South Dep. at 18-20), from which a rational jury could infer that when South ordered his K9 unit to engage, Plaintiff was incapacitated and posed no threat.

As discussed above, Hernandez's use of a taser was excessive under Plaintiff's version of the facts, despite the government's strong interest in arresting Plaintiff and the potential risk posed by Plaintiff.  *A fortiori*, South's imposition of a K9 strike was not constitutionally justified under all the circumstances, as Plaintiff posed much less of a threat after he had been tased and was laying incapacitated on the ground with a taser dart lodged in his body.  It is undisputed that South witnessed Hernandez's taser strike on Plaintiff.  Under the totality of the circumstances according to Plaintiff, South's use of intermediate force was excessive. *See, e.g., Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998) (an attack by an unreasonably deployed

**16**

police dog in the course of a seizure is a Fourth Amendment
excessive force violation).

### b. Qualified Immunity

No reasonable police officer could believe that ordering a K9
strike on a compliant and incapacitated suspect is constitutionally
permissible. *Priester v. City of Riviera Beach*, 208 F.3d 919, 927
(11th Cir. 2000); *Rogers v. City of Kennewick,* 304 Fed. Appx. 599,
601 (9th Cir. 2008) (unpublished) (officer not entitled to
qualified immunity for unreasonable use of K9); *see also Vathekan*,
154 F.3d at 179 (precedent existing in 1995 clearly established
that failure to give a warning before releasing a police dog is
objectively unreasonable in an excessive force context); *Szabla v.
City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir. 2007) (same).
According to Plaintiff, he had ceased resisting arrest and had
complied with the officers' commands to raise his hands above his
head when Hernandez tased him.  A rational jury could infer from
the evidence on the record that South ordered the K9 to engage
Plaintiff with knowledge that Plaintiff was incapacitated from the
taser strike.  Accepting Plaintiff's version of the facts as true,
South's use of intermediate force cannot be classified as a
reasonable mistake of law.  South's motion for summary judgment on
the basis of qualified immunity is DENIED.

### 4. Remaining Defendants

#### a. Constitutional Violation

The record contains evidence sufficient to permit a rational
jury to conclude that Kauffman, Yoon, and Park each employed some
quantum of intermediate force on Plaintiff after he had been tased
by Hernandez.  (Kauffman Dec. at 2) (stating that Kauffman struck

**17**

1  Plaintiff with a baton); (Park Dec. at 2) (stating that park
2  quickly stepped on Plaintiff's hand); (South Dep. at 23) (stating
3  that Yoon kicked Plaintiff).  A factual dispute exists regarding
4  Plaintiff's conduct subsequent to being tased by Hernandez.
5  Defendants contend Plaintiff was continuing to defy the officers'
6  commands by refusing to show his hands and was continuing to resist
7  arrest.  According to Plaintiff, he was unconscious from the moment
8  he was tased by Hernandez until the moment he woke up in the
9  hospital.  Accepting Plaintiff's version of the facts as true, a
10 rational jury could conclude that Kauffman, Park, and Yoon each
11 used force on Plaintiff while he was unconscious and incapacitated.
12 Gratuitous use of force when a criminal suspect is not resisting
13 arrest constitutes excessive force. *See, e.g., Reese v. Herbert*,
14 527 F.3d 1253, 1273-74, (11th Cir. 2008).

15                **b. Qualified Immunity**

16      It is clearly established that a law enforcement officer may
17 not use force on a compliant suspect already under the officer's
18 control and not resisting detention or trying to flee. *E.g. Olsen*
19 *v. Layton Hills Mall*, 312 F.3d 1304, 1314-15 (10th Cir. 2002);
20 Baker v. City of Hamilton, 471 F.3d 601, 607 (6th Cir. 2006)
21 (holding that it has long been established in that circuit that
22 "the use of force after a suspect has been incapacitated or
23 neutralized is excessive as a matter of law" and citing cases).
24 Accordingly, these Defendants are not entitled to qualified
25 immunity.  The motion is DENIED.

26            **c.  Assault and Battery Claims**

27      Under California law, the legality of a seizure is measured by
28 the reasonableness standard of the Fourth Amendment. *See Edson v.*

**18**

1  *City of Anaheim*, 63 Cal. App. 4th 1269, 1272-73, 74 Cal. Rptr. 2d

2  614 (1998).   As discussed above, the reasonableness of the

3  Defendants' actions depends on resolution of factual disputes

4  concerning Plaintiff's conduct upon leaving the residence.

5  Accepting Plaintiff's version of the facts as true, Defendants used

6  excessive force and thus Defendants are not entitled to summary

7  judgment on Plaintiff's state law claims for assault and battery.

8  The motion is DENIED.

9                                  **ORDER**

10      For the reasons stated, IT IS ORDERED:

11      1) Defendants' motion for summary judgment as to Plaintiff's

12      section 1983 claim against Defendant Hernandez on the basis of

13      qualified immunity is GRANTED;

14      2) Defendants' motion for summary judgment as to the City of

15      Bakersfield and Bakersfield Police Department is GRANTED;

16      3) Defendants' motion for summary judgment as to Defendant

17      Rector is GRANTED;

18      4) Defendants' motion for summary judgment as to Defendants

19      Park, South, Yoon, and Kauffman is DENIED; and

20      5) Defendants shall submit a form of order consistent with

21      this Memorandum Decision within five (5) days of entry of this

22      order.

23

24  IT IS SO ORDERED.

25  **Dated:   August 25, 2010**            **/s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

26

27

28

                                 **19**